UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

BRANDON NICHOLAS BARNETT,        )
                                 )
            Plaintiff,           )
                                 )
    v.                           )    No. 1:19-cv-00008-JMB
                                 )
NINA HILL, et al.,               )
                                 )
            Defendants.          )

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Brandon Nicholas Barnett for leave to commence this civil action without prepayment of the filing fee. (Docket No. 2). Having reviewed the motion, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will waive the initial partial filing fee at this time. *See* 28 U.S.C. § 1915(b)(4). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's official capacity claims and the individual capacity claims against defendants Molly Leija, Philip Tippen, Larry Graham, Jason Lewis, Paula Reed, Bruce Hanebrink, Shaun Butts, and Paula Martin. However, the Court will direct the Clerk of Court to issue process on defendants Nina Hill and Megan Crowe in their individual capacities.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-

month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted an inmate account statement. He has, however, filed a document with the Court entitled "Motion to Produce Certified Copy of Inmate Account." (Docket No. 7). In the motion, plaintiff asserts that he has tried for three months to get an inmate account statement from his institution, but has been unsuccessful. He further states that he is $1,375.50 in debt to the Department of Corrections. As such, the Court will not require plaintiff to file an initial partial filing fee at this time. *See* 28 U.S.C. § 1915(b)(4) (stating that a prisoner shall not be prohibited from bringing a civil action for the reason the prisoner has "no means by which to pay the initial partial filing fee"). However, the institution having custody of plaintiff will be directed, whenever the amount in plaintiff's prison account exceeds $10.00, to send monthly payments that equal 20 percent of the funds credited to the account the preceding month to the United States District Court for the Eastern District of Missouri, until the filing fee of $350 is fully paid. *See* 28 U.S.C. § 1915(b)(2).

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

2

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

3

## The Complaint

Plaintiff is currently incarcerated at the Southeast Correctional Center (SECC) in Charleston, Missouri. (Docket No. 1 at 2). He brings this action pursuant to 42 U.S.C. § 1983. His complaint is handwritten on a Court-provided civil rights form. He has attached a number of exhibits to his complaint, and has filed additional supplements (Docket No. 5; Docket No. 8) that provide further factual allegations. These exhibits and supplements will be treated as part of the pleading. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). Plaintiff's complaint names the following ten defendants: Nurse Practitioner Nina Hill; Nurse Paula Martin; Health Service Administrator Molly Leija; Medical Director Philip Tippen; Charge Nurse Larry Graham; Warden Jason Lewis; Assistant Warden Paula Reed; Functional Unit Manager (FUM) Bruce Hanebrink; Grievance Officer Shaun Butts; and Nurse Megan Crowe. (Docket No. 1 at 2-4). Defendants are sued in both their individual and official capacities.

Plaintiff's claims involve his contention that defendants have not properly treated his testicular pain and shrinkage. On September 5, 2018, and on three other occasions, plaintiff states that he met with Nurse Martin. (Docket No. 1 at 5). He requested pain medication that could be safety taken with his kidney condition. Plaintiff states that Nurse Martin gave him Motrin and ibuprofen and told him those medications were all he could have. He claims that he was on these medications for two weeks, even though he did not want them. He asserts that the Motrin and ibuprofen made his kidneys hurt, made him vomit blood, and caused blood in his urine. At some point, Nurse Martin referred him to the doctor.

On September 20, 2018, plaintiff was seen by Nurse Practitioner Hill. (Docket No. 1 at 3). By that time, he states that he had been complaining of testicular pain for a number of

months. He advised Nurse Practitioner Hill that he could feel several lumps, and that he was experiencing spasms and cramps of his cremaster muscles, which caused the muscles to contract and compress his testicles. Nurse Practitioner Hill told plaintiff there could be several causes for testicular shrinkage and pain, and ordered a blood test.

On September 26, 2018, plaintiff's blood was drawn. He next met with Nurse Practitioner Hill on October 11, 2018. At that appointment, Nurse Practitioner Hill advised plaintiff that his labs were good. Plaintiff alleges that Nurse Practitioner Hill told him she did not know how to diagnose his condition. He asked Nurse Practitioner Hill for further testing and to be referred to a urologist. Nurse Practitioner Hill told plaintiff that she would ask Dr. Tippen, but for a while, plaintiff heard nothing more.

Eventually, plaintiff was seen by a specialist named Dr. Winklemyer. (Docket No. 5 at 1). According to plaintiff, Dr. Winklemyer told him he would be referred to a urologist for an endoscopy. When plaintiff next saw Nurse Practitioner Hill, he told her that Dr. Winklemyer said that he was referring plaintiff to a urologist, and that it was up to Nurse Practitioner Hill to schedule an appointment. Plaintiff alleges that Nurse Practitioner Hill told him that he was not going to be seeing a urologist.

Plaintiff alleges that he sent over twenty-three letters to Health Service Administrator Leija about his testicle pain and shrinkage and to complain about Nurse Practitioner Hill's handling of his case. He states that she never responded, even though she is "over all medical staff and could correct their actions."

Similarly, plaintiff states that he wrote Medical Director Tippen over twenty-three letters and medical service requests (MSR) letting him know that Nurse Practitioner Hill was denying him medical care and did not know how to diagnose his testicular condition.

5

Plaintiff accuses Charge Nurse Graham of failing to respond to his request to file a grievance. He states that he filed an informal resolution request (IRR) on September 10, 2018. However, plaintiff did not "sign not resolved" until December 11, 2018, which he asserts is twenty-one days past the forty-day deadline. He alleges that Charge Nurse Graham continues to ignore his request and has done nothing to correct other staff actions.

Plaintiff asserts that he wrote Warden Lewis over twenty-three letters informing him that defendants Hill, Leija, Tippen, and Graham were denying him adequate medical treatment for testicle pain and shrinkage. He states that he also asked Warden Lewis to refer him to a urologist due to staff members' inability to diagnose him.

As with Warden Lewis, plaintiff alleges that he sent Assistant Warden Reed over twenty-three letters informing him that defendants Hill, Leija, Tippen, and Graham were denying him adequate medical treatment and did not know how to diagnose his testicular pain and shrinkage. He also states that Assistant Warden Reed did nothing except to write "addressed" on a kite.

Plaintiff states that he wrote FUM Hanebrink over twenty-three letters complaining that defendants Butts and Graham had not responded to his IRRs. (Docket No. 1 at 6). He claims that FUM Hanebrink has not contacted them or given plaintiff a grievance, thereby prolonging his lack of treatment and making his condition worse. Likewise, plaintiff alleges that defendant Butts is in charge of grievances but has not responded to plaintiff's request for a grievance form, despite writing him over twenty letters.

Finally, plaintiff claims that he wrote Nurse Crowe over twenty medical service requests in a two-month period. According to plaintiff, Nurse Crowe advised him that Nurse Practitioner Hill had not done anything with regards to plaintiff's request to see a doctor. He also states that Nurse Crowe told him that she could not help him with his testicular pain or shrinkage. He also

alleges that he submitted ten medical service requests for which Nurse Crowe failed to see him. (Docket No. 5 at 1).

Plaintiff is seeking damages in the total amount of $7,000,000. (Docket No. 1 at 7). He also requests that the Court order him to be seen by a urologist, order him placed on Ensure shakes, and order him to be medically paroled.

## Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants have been deliberately indifferent to his medical needs by providing him inadequate medical treatment for his testicular pain and shrinkage. For the reasons discussed below, the Court will dismiss plaintiff's official capacity claims and the individual capacity claims against defendants Molly Leija, Philip Tippen, Larry Graham, Jason Lewis, Paula Reed, Bruce Hanebrink, Shaun Butts, and Paula Martin. However, the Court will direct the Clerk of Court to issue process on defendants Nina Hill and Megan Crowe in their individual capacities.

### A. Official Capacity Claims

Plaintiff has sued all defendants in their official, as well as individual, capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v.*

*Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, plaintiff has alleged that all defendants work for SECC, meaning they are employed by the Missouri Department of Corrections. Thus, plaintiff's official capacity claims are actually claims against the Department of Corrections, rather than the individual defendants.

Plaintiff has failed to state a claim against the Missouri Department of Corrections. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983"). Furthermore, an agency exercising state power is also not a person subject to suit under § 1983. *See Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991). Plaintiff's claim against the Missouri Department of Corrections is a claim against a state agency. However, as noted above, a state agency is not a "person" for purposes of § 1983. Therefore, his claim must be dismissed.

Even if the Missouri Department of Corrections is assumed to be a § 1983 person, plaintiff has still failed to assert a claim against it. In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation resulted from (1)

an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the Missouri Department of Corrections.

First, plaintiff can show that the Department of Corrections had an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the...official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

9

> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a claim by establishing that the Department of Corrections was deliberately indifferent in failing to train or supervise its employees. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has not alleged that the Missouri Department of Corrections violated his constitutional rights due to an official policy, an unofficial custom, or a deliberately indifferent failure to train. There are no facts to support the proposition that his purportedly inadequate medical care stemmed from "a deliberate choice of a guiding principle or procedure made by the...official who has final authority regarding such matters," which is necessary to support a claim of an unconstitutional policy. Likewise, plaintiff has not alleged the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct," or that policymaking officials authorized such conduct, which is necessary to support a claim of an unconstitutional custom. Finally, plaintiff does not mention the training or supervision of employees whatsoever. Therefore, plaintiff has failed to state a claim against the Missouri Department of Corrections.[1]

---

[1] Plaintiff has alleged that all defendants are employed by the Missouri Department of Corrections. It seems likely, however, that certain of the defendants engaged in providing medical care are actually employed by Corizon, which

10

*See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

## B. Individual Capacity Claims Against Defendants Hill and Crowe

Plaintiff's individual capacity claims against defendants Nina Hill and Megan Crowe for deliberate indifference to his medical needs are sufficient for purposes of § 1915 review.

The government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care under the Eighth Amendment, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

Proving deliberate indifference requires a showing that a "medical provider knew of and disregarded a serious medical need." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). However, a showing of deliberate indifference requires more than a mere

---

contracts with the Missouri Department of Corrections to provide medical services. Thus, an official capacity claim against a Corizon employee would actually be a claim against Corizon itself. A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"). As discussed above with regard to the Missouri Department of Corrections, plaintiff does not allege any facts supporting the existence of an unconstitutional policy or custom.

disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Plaintiff alleges that Nurse Practitioner Hill and Nurse Crowe were deliberately indifferent to his testicular pain and shrinkage. He claims that both were aware of the seriousness of his medical condition and either interfered with or delayed his treatment. Specifically, he alleges that Nurse Practitioner Hill did not schedule an appointment with a urologist, even after Dr. Winklemyer referred him. As to Nurse Crowe, plaintiff alleges that he submitted ten medical service requests for which she never saw him. At this stage, the Court must accept these allegations as true, and make all reasonable inferences in plaintiff's favor. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). Therefore, plaintiff's individual capacity claims against defendants Hill and Crowe are sufficient for purposes of § 1915 review.

## C. Individual Capacity Claim Against Nurse Martin

Plaintiff's individual capacity claim against Nurse Martin for deliberate indifference must be dismissed.

To prevail on an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded those needs. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). To that end, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). As such, mere negligence or inadvertence does not rise to the level of deliberate indifference. *Id. See also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir.

2008) (stating that medical malpractice is not actionable under the Eighth Amendment); and *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) ("Negligent misdiagnosis does not create a cognizable claim under § 1983").

Plaintiff states that Nurse Martin gave him Motrin and ibuprofen when he requested pain medications. He alleges that these medications made his kidneys hurt, made him vomit blood, and caused him to have blood in his urine. This is not sufficient to state a deliberate indifference claim. Plaintiff does not allege that Nurse Martin disregarded his medical needs or delayed treatment. Rather, he disagrees with the course of treatment he received, and suggests that Nurse Martin is culpable for giving him the wrong medication. At most, this states a claim of negligence, which is not actionable under the Eighth Amendment. Therefore, plaintiff's individual capacity claim against Nurse Martin must be dismissed.

## D. Individual Capacity Claims Against Defendants Leija and Tippen

Plaintiff's individual capacity claims against defendants Leija and Tippen for failing to properly supervise the medical staff must be dismissed.

The doctrine of vicarious liability is inapplicable to § 1983 suits. *Marsh*, 902 F.3d at 754. Instead, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (stating that in order to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury).

13

The standard used to determine liability for failure to train is deliberate indifference. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). To show deliberate indifference, a plaintiff must prove that the defendant had notice that the procedures were inadequate and likely to result in a violation of constitutional rights. *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). *See also Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018) ("A supervisor may be liable under § 1983 if he (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts").

Plaintiff does not allege that Health Service Administrator Leija or Medical Director Tippen were personally responsible for providing him inadequate health care. Rather, he asserts that he sent both over twenty-three letters complaining about Nurse Practitioner Hill, and that they failed to respond to him. This is insufficient to state a supervisory liability claim.

Plaintiff makes no allegations clarifying the responsibilities of defendants Leija or Tippen for Nurse Practitioner Hill, relying instead on their positions of putative authority. He does not, however, describe the nature of that authority, or their obligation – if any – to supervise the performance of Nurse Practitioner Hill's duties. Certainly, plaintiff does not allege that Leija or Tippen failed to train Nurse Practitioner Hill. Furthermore, plaintiff provides no indication of the nature of the complaints he sent to defendants Leija or Tippen, other than to advise them that Nurse Practitioner Hill was "doing nothing at all" or was "denying [him] adequate medical care." These conclusory statements are not enough to show that defendants Leija or Tippen were put on notice of a potential constitutional violation by a subordinate. For these reasons, plaintiff has failed to state a claim against defendants Leija and Tippen in their individual capacities.

### E. Individual Capacity Claims Against Defendants Graham, Hanebrink, and Butts

Plaintiff's individual capacity claims against defendants Graham, Hanebrink, and Butts for failing to properly respond to his grievances must be dismissed.

An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (1996). Thus, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive constitutional right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Plaintiff's allegations against defendants Graham, Hanebrink, and Butts all implicate SECC's grievance procedure. He asserts that defendant Graham failed to respond to his IRR; that defendant Hanebrink did not respond to his complaints about defendant Graham, or provide him a grievance form; and that defendant Butts, who is in charge of grievances, also failed to provide him a grievance form. As noted above, a prison's grievance system does not confer upon inmates a substantive right. It thus follows that defendants' alleged failures to follow proper grievance procedures do not amount to constitutional violations. Therefore, plaintiff's individual capacity claims against defendants Graham, Hanebrink, and Butts must be dismissed.

## F. Individual Capacity Claims Against Lewis and Reed

Plaintiff's individual capacity claims against defendants Lewis and Reed for failing to respond to his complaints must be dismissed.

Liability in a § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). As such, a plaintiff must demonstrate the defendant's "causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). Thus, government officials cannot be held liable for unconstitutional conduct under a theory of respondeat superior. *Rogers*, 885 F.3d at 1122. Moreover, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995).

Plaintiff alleges that Warden Lewis and Assistant Warden Reed failed to respond to over twenty-three letters he sent them, complaining that defendants Hill, Leija, Tippen, and Graham were "all denying [him] adequate medical treatment for testicle pain and shrinkage." He also states that he requested they refer him to a urologist. These allegations are insufficient to state a claim against either Lewis or Reed.

Plaintiff's claims against defendants Lewis and Reed rely almost entirely on their positions of authority within SECC. However, as noted above, holding a position of authority in a prison does not, in and of itself, establish the type of personal involvement required to support § 1983 liability. Rather, there has to be some kind of causal connection between defendants' own

16

actions and the deprivation of plaintiff's constitutional rights. Here, plaintiff fails to establish that connection. He does not allege that defendants Lewis or Reed were responsible for his purportedly inadequate medical care, or that they had the expertise to make diagnostic judgments. Plaintiff attempts to establish liability by asserting that his complaints to Lewis and Reed went unanswered. However, his description of the letters he sent relies on conclusory statements that he was being denied "adequate treatment" and that medical staff did not know how to make a proper diagnosis. This is not enough to establish that Lewis and Reed knew of constitutional violations being committed at SECC and failed to respond, especially in light of the fact that they are not alleged to be medical professionals themselves. Therefore, plaintiff's claims against defendants Lewis and Reed must be dismissed.

### G. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). The motion must be dismissed at this time. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips*, 437 F.3d at 794.

17

After reviewing these factors, the Court finds that appointment of counsel is not warranted at this time. Plaintiff has demonstrated, up to this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor legal issues in this case appear to be unduly complex. The Court will entertain future motions for appointment of counsel as the case progresses.

### H. Motion to Produce Certified Copy of Inmate Account Statement

Plaintiff has filed a motion to produce a certified copy of his inmate account statement. (Docket No. 7). In the motion, plaintiff states that he has tried for the last three months to obtain a certified copy of his inmate account statement, but has been unsuccessful. The Court will deny plaintiff's motion as moot, given that plaintiff's initial partial filing fee has been waived. However, plaintiff will still be required to pay the full amount of the filing fee pursuant to 28 U.S.C. § 1915(b)(2).

### I. Motion to Supplement

Plaintiff has filed a motion to supplement his complaint by adding mental anguish, mental and emotional injury, and physical injury to his list of injuries. (Docket No. 8). He also seeks an additional $400,000 in damages against each defendant for mental and emotional distress. The motion will be granted, and plaintiff's complaint will be supplemented to include his request for damages due to alleged mental and emotional injuries.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**. Pursuant to 28 U.S.C. § 1915(b)(4), the initial partial filing fee is waived.

**IT IS FURTHER ORDERED** that the institution having custody of plaintiff shall, whenever the amount in plaintiff's prison account exceeds $10.00, send monthly payments that equal 20 percent of the funds credited to the account the preceding month to the United States District Court for the Eastern District of Missouri Clerk's office, pursuant to 28 U.S.C. § 1915(b)(2), until the filing fee of $350 is paid in full.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED at this time**.

**IT IS FURTHER ORDERED** that plaintiff's motion to produce a certified copy of his inmate account statement (Docket No. 7) is **DENIED AS MOOT** as plaintiff's initial partial filing fee is waived.

**IT IS FURTHER ORDERED** that plaintiff's motion to supplement (Docket No. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against all defendants and plaintiff's individual capacity claims against defendants Molly Leija, Philip Tippen, Larry Graham, Jason Lewis, Paula Reed, Bruce Hanebrink, Shaun Butts, and Paula Martin are **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to issue process or cause process to issue on defendants Nina Hill and Megan Crowe in their individual capacities as to plaintiff's claims of deliberate indifference to his medical needs, pursuant to the service agreement the Court maintains with Corizon.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 9th day of May, 2019.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE